## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Tristan J.,                                        Case No. 21-cv-248 (TNL)

      Plaintiff,

v.                                                      **ORDER**

Kilolo Kijakazi,
Acting Commissioner of Social Security, [1]

      Defendant.

---

Benjamin L. Reitan and Jacob P. Reitan, Reitan Law Office, PLLC, 1454 White Oak Drive, Chaska, MN 55318 (for Plaintiff); and

Linda H. Green, Special Assistant United States Attorney, Social Security Administration, 1301 Young Street, Suite 350, Mailroom 104, Dallas, TX 75202 (for Defendant).

---

## I. INTRODUCTION

Plaintiff Tristan J. brings the present case, contesting Defendant Commissioner of Social Security's denial of disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and supplemental security income ("SSI") under Title XVI of the same, 42 U.S.C. § 1381 *et seq.* The parties have consented to a final judgment from the undersigned United States Magistrate Judge in accordance with 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D. Minn. LR 72.1(c).

---

[1] The Court has substituted Acting Commissioner Kilolo Kijakazi for Andrew Saul. A public officer's "successor is automatically substituted as a party" and "[l]ater proceedings should be in the substituted party's name." Fed. R. Civ. P. 25(d).

This matter is before the Court on the parties' cross motions for summary judgment. ECF Nos. 19, 22.  Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, ECF No. 19, is **DENIED** and the Commissioner's Motion for Summary Judgment, ECF No. 22, is **GRANTED**.

## II. PROCEDURAL HISTORY

On June 28, 2017, Plaintiff applied for DIB and SSI asserting that he has been disabled since June 13, 2017, due to traumatic brain injury, neurocognitive disorder, depressive disorder, and anxiety disorder.  Tr. 15, 17, 229-38.  Plaintiff's applications were denied initially and again upon reconsideration.  Tr. 15, 153-57; *see generally* Tr. 71-152.

Plaintiff appealed the reconsideration of his DIB and SSI determinations by requesting a hearing before an administrative law judge ("ALJ").  Tr. 15, 169-70.  The ALJ held a hearing in October 2019, and issued an unfavorable decision.  Tr. 12-34.  After receiving an unfavorable decision from the ALJ, Plaintiff requested review from the Appeals Council, which was denied.  Tr. 1-6.

Plaintiff then filed the instant action, challenging the ALJ's decision.  Compl., ECF No. 1.  The parties have filed cross motions for summary judgment.  ECF Nos. 19, 22. This matter is now fully briefed and ready for a determination on the papers.

## III. ANALYSIS

### A. Legal Standard

Disability benefits are available to individuals who are determined to be under a disability.  42 U.S.C. §§ 423(a)(1), 1381a; *see also* 20 C.F.R. §§ 404.315, 416.901.  An

individual is considered to be disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). This standard is met when a severe physical or mental impairment, or impairments, renders the individual unable to do his previous work or "any other kind of substantial gainful work which exists in the national economy" when taking into account his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); *accord* 42 U.S.C. § 1382c(a)(3)(B); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). In general, the burden of proving the existence of disability lies with the claimant. 20 C.F.R. §§ 404.1512(a), 416.912(a).

The ALJ determines disability according to a five-step, sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

> To determine disability, the ALJ follows the familiar five-step process, considering whether: (1) the claimant was employed; (2) [ ]he was severely impaired; (3) h[is] impairment was, or was comparable to, a listed impairment; (4) [ ]he could perform past relevant work; and if not, (5) whether [ ]he could perform any other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). In this evaluation process, the ALJ determines the claimant's residual functional capacity, which "is the most he can do despite his limitations." 20 C.F.R. § 404.1545(a)(1); *accord* 20 C.F.R. § 416.945(a)(1); *see McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011) ("A claimant's [residual functional capacity] represents the most he can do despite the combined effects of all of his credible limitations

and must be based on all credible evidence."); *see also, e.g.*, *Schmitt v. Kijakazi*, 27 F. 4th 1353, 1360 (8th Cir. 2022) (same). "Because a claimant's [residual functional capacity] is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Perks*, 687 F.3d at 1092 (quotation omitted); *accord Schmitt*, 27 F. 4th at 1360.

At the same time, the residual-functional-capacity determination "is a decision reserved to the agency such that it is neither delegated to medical professionals nor determined exclusively based on the contents of medical records." *Norper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020); *see Perks*, 687 F.3d at 1092; *see also* 20 C.F.R. §§ 404.1546(c), 416.946(c). "An ALJ determines a claimant's [residual functional capacity] based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or her] limitations." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quotation omitted); *accord Schmitt*, 27 F. 4th at 1360; *Norper*, 964 F.3d at 744-45. As such, there is no requirement that a residual-functional-capacity determination "be supported by a specific medical opinion." *Schmitt*, 27 F. 4th at 1360 (quotation omitted). Nor is an ALJ "limited to considering medical evidence exclusively." *Id.* (quotation omitted). Accordingly, "[e]ven though the [residual-functional-capacity] assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Perks*, 687 F.3d at 1092 (quotation omitted); *accord Schmitt*, 27 F. 4th at 1360; *see* 20 C.F.R. §§ 404.1546(c), 416.946(c).

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g), or if the ALJ's decision resulted from an error of law. *Nash v. Comm'r, Soc. Sec. Administration*, 907 F.3d 1086, 1089 (8th Cir. 2018) (citing 42 U.S.C. § 405(g); *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018)). The Court reviews whether the ALJ's decision is supported by substantial evidence in the record as a whole. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted); *see, e.g.*, *Chismarich*, 888 F.3d at 979 (defining "substantial evidence as less than a preponderance but enough that a reasonable mind would find it adequate to support the conclusion" (quotation omitted)).

This standard requires the Court to "consider both evidence that detracts from the [ALJ's] decision and evidence that supports it." *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); *see Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). The ALJ's decision "will not [be] reverse[d] simply because some evidence supports a conclusion other than that reached by the ALJ." *Boettcher*, 652 F.3d at 863; *accord Grindley*, 9 F.4th at 627; *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012). "The court must affirm the [ALJ's] decision if it is supported by substantial evidence on the record as a whole." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (quotation omitted). Thus, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm

the ALJ's decision." *Perks*, 687 F.3d at 1091 (quotation omitted); *accord Chaney*, 812 F.3d at 676.

**B. ALJ's Decision**

In this case, the ALJ followed the five-step, sequential evaluation process for determining disability for DIB and SSI.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of June 13, 2017.  Tr. 17.  At step two, the ALJ found that Plaintiff had the following severe impairments: traumatic brain injury, neurocognitive disorder, depressive disorder, and anxiety disorder.  Tr. 17-18.  At step three, the ALJ  concluded that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app.1.  Tr. 18-20.

The ALJ then found that Plaintiff had the residual functional capacity to perform light work[2] with the following limitations: "[H]e can occasionally push/pull with the right upper extremity.  He can occasionally handle and finger with the right upper extremity.  He can adapt to routine changes in a workplace setting.  He cannot perform a job that requires traveling."  Tr. 20.  In reaching this residual functional capacity, the ALJ conducted an analysis of the medical opinions and evidence, prior administrative medical findings, and

---

[2] As set forth in the regulations,

> [l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.1567(b); *accord* 20 C.F.R. § 416.967(b).

Plaintiff's symptoms. *See id*. Specifically, with respect to Plaintiff's mental residual functional capacity, which is at issue here, the ALJ reviewed the state agency consultants' mental assessments, which concluded that Plaintiff had "mild to moderate mental limitation." Tr. 25. The state agency consultants "opined that [Plaintiff] would be limited to carrying out simple, routine instructions due to his significant memory limitations," but that Plaintiff "could adapt to routine changes in a workplace setting, [though] his significant physical limitations would limit him in traveling and other areas." *Id*. The ALJ found that the state agency consultants' assessments were "generally persuasive" because they were consistent with "the relatively intact mental status examinations" in the record and Plaintiff's own reports of functioning. *Id*.

At step four, the ALJ found that Plaintiff was unable to perform past relevant work as a school bus driver or "sales person-parts." *Id*. At step five, however, the ALJ found that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. Tr. 27. In making this determination, the ALJ considered the testimony of the vocational expert at Plaintiff's hearing. *Id*. At the hearing, the ALJ said to the vocational expert:

> I would like to ask a series of hypothetical questions, and these will be based upon a person having [Plaintiff's] same age, education, and vocational background. For the first hypothetical . . . assume that this gentleman is . . . limited to work at the light exertional level, except pushing and pulling with the right upper extremity is limited to occasional, and the right upper extremity handling and fingering is limited to occasional. And that individual can understand, remember, and follow simple routine instructions. He can adapt to routine changes in a workplace setting. And he should have a job that does not require him to travel to other work locations.

Tr. 57-58.  The vocational expert testified that the hypothetical individual could perform jobs such as school bus monitor, furniture rental consultant, or investigator dealer accounts, which are all light exertional level and unskilled[3] occupations.  Tr. 58-59.  The ALJ concluded that, based on Plaintiff's age, education, work experience, residual functional capacity, and the testimony of the vocational expert, Plaintiff was capable of performing other work, and Plaintiff was therefore not under disability.  Tr. 26-27.

### C.  State Agency Consultants' Mental Limitations

Plaintiff argues that the ALJ erred in his residual-functional-capacity determination because he failed to include the state agency consultants' mental limitations to "routine and simple instructions" and "unskilled work."  Pl.'s Mem. in Supp. at 15, ECF No. 20. Plaintiff contends that the ALJ failed to provide an explanation for why those limitations were not adopted in the residual functional capacity.  *Id*.  Plaintiff also contends that the ALJ's failure to adopt those limitations is inherently inconsistent with the ALJ's own findings and generally inconsistent with the substantial evidence of the record as a whole. *Id*. at 16.  Plaintiff argues that the case must be remanded because the vocational expert

---

[3] As set forth in the regulations,

> [u]nskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs.

20 C.F.R. § 404.1568(a); *accord* 20 C.F.R. § 416.968(a).

was not asked what effect a limitation to "unskilled work" and "simple and routine instructions" would have on the jobs identified by the vocational expert. *Id.* at 17.

The Commissioner concedes that the ALJ's residual-functional-capacity finding, that Plaintiff "can adapt to routine changes in a workplace setting" and "cannot perform a job that requires traveling," does not include the state agency consultants' limitations to "routine, simple instructions." Def.'s Mem. in Supp. at 4, ECF No. 23. The Commissioner argues, however, that any error was harmless because the ALJ included the limitations in his hypothetical question to the vocational expert. *Id.* The Commissioner contends that the ALJ's hypothetical question, which included the mental limitations to "understand, remember, and follow simple instructions[, and] adapt to routine changes in a workplace setting," is the equivalent of the state agency consultants' limitations to "routine and simple instructions" and "unskilled work." *Id.* at 5. The Commissioner also notes that the vocational expert considered the ALJ's hypothetical question and responded that a hypothetical individual could work in three different "unskilled" jobs. *Id.* Therefore, according to the Commissioner, the jobs proposed by the vocational expert accommodated the limitations provided by the state agency consultants. *See id.* Thus, even if it was error for the ALJ to omit the limitations in the residual functional capacity, any error was harmless, and Plaintiff's arguments are moot. *See id.*

As an initial matter, the Court notes that the Commissioner does not concede explicitly that the ALJ erred by omitting the state agency consultants' mental limitations in his residual functional capacity. Instead, the Commissioner argues that even "*if the ALJ erred*," any error was harmless. *See id.* The Commissioner, however, does not provide

any arguments in support of finding that the ALJ did *not* err.  Thus, in addressing the parties' arguments, the Court will assume that the ALJ erred by failing to include the state agency consultants' mental limitations to "routine and simple instructions" and "unskilled work."

"The Eighth Circuit recognizes the doctrine of harmless-error in Social Security cases."  *Brown v. Colvin*, 992 F. Supp. 2d 947, 953 (D. Neb. 2014) (citation omitted).  An ALJ's error requires reversal and remand only if the error prejudices the claimant.  *Samons v. Astrue*, 497 F.3d 813, 821-22 (8th Cir. 2007).  It is the claimant's burden to show that an error was not harmless.  *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012).  "To show an error was not harmless, [the claimant] must provide some indication that the ALJ would have decided differently if the error had not occurred."  *Byes v. Astrue*, 687 F.3d at 917 (citing *Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008) ("[T]here is no indication that the ALJ would have decided differently . . . and any error by the ALJ was therefore harmless.")).

Specifically, when an ALJ errs by failing to include certain limitations in the residual functional capacity, such error is harmless where the jobs identified by the ALJ encompass those limitations.  *See, e.g., Caudle v. Colvin*, No. 13-cv-5312, 2015 WL 1886863, at *7 (W.D. Ark. Apr. 24, 2015) (finding that an ALJ's failure to incorporate certain limitations in the residual functional capacity was harmless error where the job identified by the ALJ included such limitations); *Freilinger v. Saul*, No. 20-CV-2001-LRR, 2021 WL 1593257, at *15 (N.D. Ia. Feb. 4, 2021) ("Even if the ALJ erred by not explicitly including a limitation to 'unskilled work' or 'simple repetitive tasks,' in the [residual

functional capacity], the error was harmless because the jobs identified were jobs that a person limited to unskilled work, which encompasses 'simple repetitive tasks,' could perform."), *report and recommendation adopted*, 2021 WL 916929 (N.D. Ia. Mar. 10, 2021) (citing *Bantz v. Berryhill*, No. 17-CV-2-LRR , 2018 WL 3078111, at *6 (N.D. Ia. Feb. 22, 2018), *report and recommendation adopted*, 2018 WL 1522693 (N.D. Ia. Mar. 28, 2018)); *see also Asher v. Astrue*, No. 11-3166-CV-S-ODS, 2012 WL 287394, at *2 (W.D. Mo. Jan. 31, 2012) (concluding that an ALJ's failure to include postural limitations in the residual functional capacity was harmless error because even if the limitations would have been included, it "would not have changed that ALJ's determination that Plaintiff could return to his past work.").  Further, any error is harmless where the ALJ poses a hypothetical to the vocational expert that addresses the limitations that were excluded from the residual functional capacity.  *See, e.g., Reid v. Colvin*, No. 2:14-cv-04295-MDH, 2016 WL 502063, at *3 (W.D. Mo. Feb. 8, 2016) (citing *Pearson v. Astrue*, No. 8:11CV83, 2011 WL 5142730, at *8 (D. Neb. Oct. 28, 2011) (finding that an ALJ's failure to include an unskilled work limitation in the residual functional capacity was harmless where the ALJ addressed the limitation in the hypothetical questions to the vocational expert)).

For the reasons set forth below, the Court agrees with the Commissioner.  Even assuming that the ALJ erred by failing to include limitations to "routine and simple instructions" and "unskilled work" in the residual functional capacity, any error was harmless because there is no indication that the ALJ would have decided differently if he had, in fact, included those limitations in his residual functional capacity.

First, any error in the ALJ's residual functional capacity is harmless because the ALJ addressed the "routine and simple instructions" limitation in the hypothetical question to the vocational expert at Plaintiff's hearing. When posing the hypothetical question, the ALJ included the limitations to "understand, remember, and follow *simple routine instructions*," and "adapt to routine changes in a workplace setting." Tr. 57-58 (emphasis added). Thus, the ALJ included the state agency consultants' mental limitation to "routine and simple instructions" in the hypothetical question, and any error in failing to include the limitation in the residual functional capacity was therefore harmless. *See Pearson v. Astrue*, 2011 WL 5142730, at *8 ("When asked whether a hypothetical individual with [the claimant's] age, education and work experience could perform 'unskilled work,' the vocational expert testified that the individual could perform 'unskilled work' . . . . In light of this, the ALJ's failure to include an 'unskilled work' limitation in his [residual functional capacity] determination was harmless.").

While the ALJ's hypothetical question did not include the limitation to "unskilled work," any error is harmless because the jobs identified by the ALJ encompass that limitation. Specifically, the ALJ found that Plaintiff was capable of making a successful adjustment to other jobs identified by the vocational expert, including school bus monitor, furniture rental consultant, or investigator dealer accounts. Tr. 26-27. An ALJ classifies jobs based on occupational descriptions given in the *Dictionary of Occupational Titles* ("*DOT*"). *Titles II & XVI: Past Relevant Work-the Particular Job or the Occupation as Generally Performed*, SSR 82-61, 1982 WL 31387 at *1-2 (S.S.A. 1982). The *DOT* lists a Specific Vocational Preparation ("SVP") level for each job, which denotes the "amount

12

of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance." *See DOT*, app. C, 1991 WL 688702 (4th ed. 1991).  SVP levels 1 and 2 correspond to "unskilled" work, levels 3 and 4 correspond to "semi-skilled" work, and levels 5-9 correspond to "skilled" work.  SSR 00-4P, 2000 WL 1898704, at *3 (Dec. 4, 2000).  According to the *DOT*, a school bus monitor is a SVP level 2 job (*DOT* § 372.667-042), a furniture rental consultant is a SVP level 2 job (*DOT* § 295.357-018), and an investigator dealer accounts is a SVP level 2 job (*DOT* § 241.367-038).  The vocational expert also testified that each of these jobs was an "unskilled" occupation.  Tr. 58-59.  Thus, each of the jobs the ALJ identified that Plaintiff could perform were "unskilled work."  Even if the ALJ erred by not explicitly including a limitation to "unskilled work" in the residual functional capacity, the error was harmless because the school bus monitor, furniture rental consultant, and investigator dealer accounts jobs limited Plaintiff to "unskilled work."  *See Freilinger*, 2021 WL 1593257, at *15; *Bantz*, 2018 WL 3078111, at *6.

Moreover, it is Plaintiff's burden to show that any error was not harmless, and Plaintiff has failed to meet that burden here.  *See Byes*, 687 F.3d at 917.  Plaintiff has not provided any "indication that the ALJ would have decided differently" if he would have included the state agency consultants' limitations to "routine and simple instructions" and "unskilled work" in the residual functional capacity.  *See id*.  Plaintiff's sole contention is that remand is necessary to allow the ALJ to ask the vocational expert "what effect a limitation to unskilled work or a limitation to simple and routine instructions would have on the job base identified."  See Pl.'s Mem. in Supp. at 17.  But Plaintiff does not provide

13

any explanation as to how the ALJ's decision would change if the ALJ were able to ask the vocational expert what effect the limitations would have on the potential job base.  In fact, as discussed previously, the ALJ's hypothetical question *did* include the "simple routine instructions" limitation, and the jobs identified by the vocational expert were all "unskilled" jobs.  Absent any indication from Plaintiff that the ALJ would have decided differently if the limitations were included in the residual functional capacity, the Court is left to speculate as to whether and how the ALJ's decision would change.[4]

In sum, Plaintiff has not met his burden to "provide some indication that the ALJ would have decided differently if the error had not occurred."  *See Byes*, 687 F.3d at 917. Accordingly, any error in omitting the limitations from the residual functional capacity was harmless, and Plaintiff's motion for summary judgment is denied.

[*Continued on next page.*]

---

[4] The Court notes that one of the jobs identified by the vocational expert, investigator dealer accounts, requires a reasoning level of 4.  *See DOT* § 241.367-038.  Level 4 reasoning level jobs require an individual to "[a]pply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists."  *See DOT*, app. C, 1991 WL 688702.  Considering Plaintiff's residual functional capacity, the investigator dealer accounts position likely "should not have been included in those [Plaintiff] could perform."  *See, e.g., Cerveny v. Saul*, No. 8:19CV541, 2020 WL 4260521, at *4, *9 n.14 (D. Neb. July 24, 2020).  Nonetheless, even without considering the investigator dealer accounts job, there appear to be a significant number of jobs in the national economy that Plaintiff could perform as, for example, a school bus monitor, which is a level 2 reasoning job and for which there are 50,000 jobs nationally.  Still, Plaintiff did not raise this as an issue in his brief.  Plaintiff is represented by counsel and the Court will not craft arguments for him.  *See Laveau v. Astrue*, No. 11-cv-505 (SRN/LIB), 2012 WL 983598, at *12 n.6 (D. Minn. Feb. 14, 2012), *report and recommendation adopted*, 2012 WL 983630 (D. Minn. Mar. 22, 2012).  It was Plaintiff's burden to "provide some indication that the ALJ would have decided differently if the error had not occurred."  *See Byes*, 687 F.3d at 917. Plaintiff failed to do so here.

## IV. ORDER

Based upon the record, memoranda, and the proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

1.  Plaintiff's Motion for Summary Judgment, ECF No. 19, is **DENIED.**

2.  The Commissioner's Motion for Summary Judgment, ECF No. 22, is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August __26__, 2022                    _____*s/ Tony N. Leung*_____
                                              Tony N. Leung
                                              United States Magistrate Judge
                                              District of Minnesota


                                              *Tristan J. v. Kijakazi*
                                              Case No. 21-cv-248 (TNL)